UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ARSENIO EATON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00410-JRS-MKK |
| | ) | |
| JOHN PLASSE, | ) | |
| CYNTHIA DUGGER, | ) | |
| MELISSA SMITH, | ) | |
| KEGAN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Arsenio Eaton is a pretrial detainee at the Vigo County Jail. In this civil rights action, Mr. Eaton alleges that Defendant Melissa Smith ("Smith") failed to call medical staff after he had a seizure. Mr. Eaton proceeds on a Fourteenth Amendment deliberate indifference claim and a state law negligence claim. Dkt. 13 at 3.

Defendant Smith has moved for summary judgment, arguing that she needed to finish locking down the pod prior to having Mr. Eaton medically assessed, which is something only medical staff can do. Dkt. [51].

Mr. Eaton did not respond to Defendant's motion for summary judgment.[1] For the reasons below, Defendant Smith's motion for summary judgment is **granted.**

---

[1] The Court notes that, along with filing a motion for summary judgment, a moving party must provide a notice to pro se litigant alerting the pro se party of their right to respond. S.D. Ind. L.R. 56-1(k). Defendant filed her motion for summary judgment on April 24, 2024. She did not file her notice to pro se litigant until October 7, 2024, almost six months after the motion for summary judgment was filed. Dkt. 52. Regardless, Mr. Eaton did not move for additional time to respond after receiving the notice, so the motion remains unopposed after the passage of nearly four additional months following the filing of the notice.

1

# I.
# Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Plaintiff failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record.

S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Eaton and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Mr. Eaton is a pretrial detainee at the Vigo County Jail ("Jail") Dkt. 51-4 at 8. Melissa Smith is a correctional officer at the jail. Dkt. 51-2 at 1, dkt. 51-3 at 1.

### B. Medical Care at Vigo County Jail

Non-party Quality Correctional Care ("QCC") contracts with the Vigo County Sheriff to provide medical care to inmates at the jail. Dkt. 51-3 at 1. The medical department at the jail consists of QCC employees. *Id.*

### C. Mr. Eaton's History of Seizures

Mr. Eaton suffered from a seizure before his incarceration and has suffered approximately four or five seizures since being incarcerated. Dkt. 51-4 at 9-10, 14. The nurse and staff at Vigo County Jail indicated that Mr. Eaton's seizures are stress induced. Dkt. 51-4 at 15-16. The medical department at the Jail prescribed medication for Mr. Eaton's seizures in 2022. Dkt. 51-3 at 2; dkt. 51-4 at 14-15.

### D. Mr. Eaton's August 3, 2022, seizure

On August 3, 2022, Mr. Eaton was housed in N-pod. Dkt. 51-2 at 1, dkt. 51-4 at 14. Defendant Smith was working the 4:00 PM to 12:00AM shift on August 3rd. Dkt 51-2 at 1. She was assigned to work N-pod during that shift. *Id.*

Staff turn off lights at the jail at 10:00 PM. Dkt. 51-2 at 1, dkt. 51-4 at 13. All inmates are locked down before the lights are turned off. Dkt. 51-2 at 1. Before the lights were turned off on August 3, Ms. Smith instructed N-pod inmates to go to their cells. *Id.* The N-pod inmates were then locked down. *Id.* As part of the lock down procedure, Ms. Smith performed an inmate count. *Id.*

During count, Mr. Eaton informed Ms. Smith that he was having a seizure. *Id.*, dkt. 51-4 at 13. Ms. Smith attests that Mr. Eaton did not appear to be in distress when he told her he had a seizure. Dkt. 51-2 at 1. Ms. Smith finished conducting count of inmates on N-pod. *Id.* Ms. Smith then went to the office and completed the inmate count sheet. *Id.* at 2. When she returned to N-pod, Ms. Smith then had Mr. Eaton assessed by the Medical Department, who determined that he did not need additional care. *Id.* Mr. Eaton attests that it had been about ten to fifteen minutes after he had woken up from his seizure until an officer came back into N-pod. Dkt. 51-4 at 19.

### III.
### Discussion

Mr. Eaton alleges that Defendant Smith violated his right to medical care by failing to call medical staff after he had a seizure. Dkt. 1 at 1.

### A. Fourteenth Amendment Claim

A pretrial detainee's unconstitutional medical care claim, brought under the Due Process Clause of the Fourteenth Amendment, is analyzed according to the objective unreasonableness inquiry laid out in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Miranda v. County of Lake*, 900

4

F.3d 335, 352 (7th Cir. 2018). A defendant violates a pretrial detainee's due process right to constitutionally acceptable medical care if:

> (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] "purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm.

*Gonzalez v. McHenry County, Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Miranda*, 900 F.3d at 353−54). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (cleaned up).

Defendant Smith argues that she did not deny Mr. Eaton's request for medical care. Dkt. 51-1 at 4. She also argues that QCC is responsible for Mr. Eaton's medical care. *Id.* at 7. Finally, Ms. Smith argues that she is entitled to qualified immunity. *Id.* at 8.

Here, the Court must determine whether Defendant Smith's actions on April 3, 2022, were objectively reasonable. The Court finds that they were.

The undisputed evidence reflects that it was not until after Mr. Eaton had a seizure that he asked Ms. Smith to seek medical assistance. Dkt. 51-2 at 1; dkt. 51-4 at 13. At that point, Ms. Smith was in the middle of conducting lockdown procedures and completing the count. *Id.* Mr. Eaton was not in distress when he told Ms. Smith that he had a seizure. Dkt. 51-2 at 1. Accordingly, Ms. Smith finished conducting count of inmates on N-pod and went to the office to complete the inmate count sheet. *Id.* at 1-2. The evidence reflects that, upon her return to N-pod, Ms. Smith had Mr. Eaton assessed by the Medical Department, who determined that he did not need additional

5

care. *Id.* It had been about ten to fifteen minutes after Mr. Eaton had woken up from his seizure until Ms. Smith came back into N-pod. Dkt. 51-4 at 19.

Ms. Smith conducted count to ensure the safety and security of the inmates and staff on N-pod. The safety and security of the jail and its staff are critically important, and federal courts will not second guess their security decisions unless a decision manifests an intent to punish or unless their actions amount to a deprivation of life's necessities. *Rhodes* v. *Chapman*, 452 U.S. 337, 347 (1981). Nothing in the record illustrates an intent to punish or deprive Mr. Eaton of life's necessities. Rather, the record reflects that Ms. Smith completed her obligations as it relates to the security of N-pod before seeking medical assistance for Mr. Smith after he woke up from a seizure. Dkt. 51-2 at 1; dkt. 51-4 at 19. This was reasonable in light of the fact that Mr. Smith did not appear to be in distress or to be suffering from a medical emergency at the time he requested help from Ms. Smith.

Further, the Seventh Circuit has long held that that jail guards and officials generally may defer to medical staff to tend to detainees' medical needs without fear of liability for doing so. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). In fact, the law "encourages" such deference. *Id.* An exception to this rule applies if a jail official "had reason to know that the medical staff was failing to treat or inadequately treating an inmate." *Miranda*, 900 at 343. Here, the evidence reflects that Ms. Smith called medical as soon as she completed count. Dkt. 51-2 at 1-2. Mr. Eaton estimates the length of time to be approximately fifteen minutes. Dkt. 51-4 at 19. Insofar as Mr. Eaton suggests that Ms. Smith ought to be liable because her response was not fast enough, the Constitution "requires reasonableness, not immediacy." *Pulera v. Sarzant*, 966 F.3d 540, 555 (7th Cir. 2020) (quoting *Sallenger v. City of Springfield*, 620 F.3d 499. 504 (7th Cir. 2010)).

Mr. Eaton does not present facts that could lead a reasonable finder of fact to conclude that Ms. Smith violated Mr. Eaton's rights under the Fourteenth Amendment. *See id.* ("That a tragedy . . . happened under the watch of jail officers, though, does not mean the officers are responsible."). Accordingly, Ms. Smith is entitled to summary judgment on Mr. Eaton's Fourteenth Amendment claim against her.

Because this Court finds that Ms. Smith's actions were objectively reasonable in light of the circumstances, this Court need not analyze whether Ms. Smith is entitled to qualified immunity.

### B. State Law Claims

With Mr. Eaton's constitutional claims staged for dismissal, the Court has discretion whether to exercise supplemental jurisdiction over his remaining state-law claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is entirely discretionary."). "Indeed, when the federal claims are dismissed before trial, *there is a presumption* that the court will relinquish jurisdiction over any remaining state law claims." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (emphasis added).

When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks and quoted authority omitted).

In the Seventh Circuit, "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Sharp Elecs. v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks and quoted authority omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (internal quotation marks and quoted authority).

No circumstance in this case overcomes the presumption that the Court should relinquish jurisdiction over Mr. Eaton's state-law claims.

The statute of limitations is not a factor. Both federal and state law toll the relevant limitation period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998).

The Court has not expended significant resources on the pending state-law claims. The Court does not expect that the parties' discovery and briefing efforts with respect to the state law claims will go to waste. Rather, the evidence and legal research they have uncovered should be every bit as relevant in a state-court proceeding.

Further, it is not absolutely clear how the state-law claims should be resolved. The outcome of Mr. Eaton's negligence claim is not so obvious as to weigh in favor of the federal court retaining

jurisdiction. Finally, comity always favors allowing state courts to decide issues of state law. Having resolved all claims within its original jurisdiction, the Court exercises its discretion and relinquishes supplemental jurisdiction over Mr. Eaton's state law claims.

## IV.
## Conclusion

Defendant Melissa Smith's motion for summary judgment is **GRANTED**. Dkt. [41]. The trial and all related proceedings are vacated. Final judgment consistent with this Order and the Court's May 31, 2023, Screening Order, dkt. [13], which previously dismissed all other claims and Defendants, shall now issue.

**IT IS SO ORDERED.**

Date: 2/6/2025

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ARSENIO EATON
VIGO COUNTY JAIL
VIGO COUNTY JAIL
600 W. Honey Creek Dr.
Terre Haute, IN 47802

All Electronically Registered Counsel